UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MAINE REPUBLICAN PARTY,<br><br>       Plaintiff,<br>v.<br><br>MATTHEW DUNLAP, in his official capacity as Secretary of State for the State of Maine,<br><br>       Defendant. | Civil Action No. _____<br><br>**DECLARATORY AND INJUNCTIVE RELIEF SOUGHT** |

**VERIFIED COMPLAINT**

Plaintiff Maine Republican Party (the "Party") hereby files this Complaint for Declaratory Judgment and Injunctive Relief, complaining of Defendant Matthew Dunlap, Secretary of State for the State of Maine (the "Secretary"), and respectfully alleges as follows:

**INTRODUCTION**

1. Plaintiff asks the Court to declare the Act to Establish Ranked-Choice Voting (the "RCV Act"), to be unconstitutional as applied to the Party's process for nominating its candidates for federal and state elected office. The RCV Act severely burdens the Party's right to freedom of association under the First and Fourteenth Amendments to the U.S. Constitution. Specifically, it requires the Party to change the process which the Party has deemed most appropriate for selecting candidates to represent the Party's beliefs and messages. The State has no compelling justification for imposing this burden on the Party's associational rights.

2. Under Maine law, ranked choice voting will be in effect for the primary elections to be held in June 2018, including for the Party's primaries. Implementation of ranked choice

voting under the RCV Act threatens irreparable injury to the Party because it requires that the Party's candidates be selected by a process that directly conflicts with the process adopted in the Party's rules, in contravention of the Party's First Amendment rights.  Because ranked choice voting is unconstitutional as applied to the Party's primaries, implementation of ranked choice voting threatens the validity of the primary elections overseen by the Secretary.

## JURISDICTION AND VENUE

3. This Court has subject matter question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case raises questions arising under the Constitution of the United States.  This Court further has jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

4. This Court has personal jurisdiction over Defendant because he resides within the District of Maine.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to these claims occurred in this District and Defendant resides in the State of Maine.

## PARTIES

6. Plaintiff Maine Republican Party is an unincorporated association, with a principal place of business at 9 Higgins Street, Augusta, ME 04330.  The Party was established in 1854 for the purpose of promoting and implementing certain principles and ideas by, among other means, nominating Republican candidates for, and electing those Republican candidates to, state and federal offices such as State Representative, State Senator, Governor, U.S. Representative, and U.S. Senator.  The Party also conducts other civic and political activities, such as engaging in political expression and supporting or opposing ballot initiatives, and the Party's candidates for elected office play a critical role in these civic and political activities.  The

Party is affiliated with the national Republican Party, which participates in electoral politics and other civic and political activities across the United States.

7. Defendant Matthew Dunlap (hereinafter the "Secretary") is the Secretary of State for the State of Maine. The Secretary is a constitutional officer for the State of Maine and maintains an office in the City of Augusta, County of Kennebec, State of Maine. Among other responsibilities, the Secretary of State is charged with conducting Maine's system of state and federal elections in accordance with state and federal law. The Secretary is being sued in his official capacity. The relief requested in this action is sought against the Secretary, as well as against the Defendant's officers, employees, agents and all persons acting in cooperation with the Secretary, under his supervision, at his direction, or under his control.

## FACTS

### Implementation of Ranked Choice Voting

8. In November 2016, a statute entitled "An Act to Establish Ranked-Choice Voting" was enacted via citizen initiative by a vote of 52.12% to 47.88%. The RCV Act required the Secretary to implement ranked choice voting for elections of U.S. Senators, U.S. Representatives, Governor, State Senators, and State Representatives in Maine, as well as primaries for those offices, occurring on or after January 1, 2018. *See* L.D. 1557. A true and accurate copy of the RCV Act is attached as Exhibit A. The RCV Act was codified at 21-A M.R.S. §§ 1(27-C), 1(35-A), 601, 722, and 723-A.

9. The term "ranked choice voting" is defined in the RCV Act as "the method of casting and tabulating votes in which voters rank candidates in order of preference, tabulation proceeds in sequential rounds in which last-place candidates are defeated and the candidate with the most votes in the final round is elected." L.D. 1557, § 2.

10. Ranked choice voting under the RCV Act works as follows. Voters are permitted to "rank" candidates for an office in order of preference. That is, they can indicate on their ballots that a particular candidate is their first choice, another candidate is their second choice, yet another is their third choice, and so on. If one candidate receives an outright majority of first choice votes in the first round of counting, he or she wins. If no candidate receives a majority, the candidate with the fewest first choice votes is eliminated and voters who chose that candidate as their first choice have their ballots counted for their second choice. This process repeats and last-place candidates are eliminated until one candidate receives a majority and wins.

11. As enacted via citizen initiative, therefore, the RCV Act mandated that elections of U.S. Senators, U.S. Representatives, Governor, State Senators, and State Representatives in Maine, as well as primaries for those offices, be determined by majority vote.

12. The purpose of the RCV Act was to ensure that candidates favored by a plurality but not a majority of voters do not win, and to change candidates' campaign messaging. Proponents of the RCV Act stated: "Ranked choice voting ensures that candidates with the most votes and broadest support win, so voters get what they want. Candidates who are opposed by a majority of voters can never win ranked choice voting elections." Proponents also stated that ranked choice voting "reduces incentives for negative campaigning."[1]

13. Prior to adoption of the RCV Act, elections of U.S. Senators, U.S. Representatives, Governor, State Senators, and State Representatives in Maine, as well as primaries for those offices, were determined by simple plurality. Under the simple plurality system, voters are only permitted to select one candidate for an office and the candidate that receives the most votes (whether or not they obtain an absolute majority) wins.

---

[1] *See* http://www.rcvmaine.com/what_are_the_benefits_of_voting_with_a_ranked_choice_ballot (last visited May 3, 2018).

14. In February 2017, the Maine Senate asked the Maine Supreme Judicial Court ("SJC") for an advisory opinion as to the constitutionality of ranked choice voting in general elections for state offices in light of the provisions in the Maine Constitution mandating that elections for State Representative, State Senator, and Governor be determined by "plurality." Me. Const. art. IV, pt. 1, § 5; *id.* art IV, pt. 2, § 4; *id.* Art. V, pt. 1, § 3. The Justices answered the Senate's question. *Opinion of the Justices*, 2017 ME 100, 162 A.3d 188.

15. The SJC explained the distinction between the plurality system established by the Maine Constitution and the majority system established by the RCV Act. Under the plurality system, "an election is won by the candidate that first obtains 'a plurality of' all votes returned." That is, "[i]f, after one round of counting, a candidate obtained a plurality of the votes but not a majority, that candidate would be declared the winner." Under the RCV Act, "that same candidate would not then be declared the winner. Instead, the candidate, though already having obtained a plurality of the votes, would be subject to additional rounds of counting in which second, third, and fourth choices are accounted for and the lowest vote-garnering candidates are successively eliminated. Once those additional rounds are completed, a different candidate may be declared the winner . . . because that candidate obtained a *majority* of the votes." In short, the "Act prevents the recognition of the winning candidate when the first plurality is identified."

16. Because ranked choice voting fundamentally changed the plurality system, the SJC opined that the Act violated the Maine Constitution insofar as it applied to general elections for state office. The SJC reasoned as follows: while the Maine Constitution mandates that "a candidate [for State Representative, State Senator, or Governor] who receives a plurality of the votes would be declared the winner of that election," the "Act, in contrast, would not declare the plurality candidate the winner of the election, but would require continued tabulation until a

majority is achieved or all votes are exhausted." The SJC concluded that the RCV Act was "in direct conflict with the [Maine] Constitution."

17. In October 2017, after the Supreme Judicial Court issued its *Opinion of the Justices*, the Maine Legislature adopted L.D. 1646, "An Act to Implement Ranked-choice Voting in 2021" (hereafter, the "2021 Implementation Act"). The 2021 Implementation Act delayed implementation of ranked choice voting for all relevant elections until December 1, 2021, and repealed ranked choice voting for all relevant elections as of that date unless, prior to December 1, 2021, Maine voters ratified an amendment to the Maine Constitution authorizing the Legislature to determine the method by which the Governor and members of the State Senate and House of Representatives are elected. Pub. Law 2017, ch. 316. A true and accurate copy of the 2021 Implementation Act is attached as Exhibit B. The 2021 Implementation Act was codified at 21-A M.R.S. §§ 1(27-C), 1(35-A), 601, 695, 722-723, and 723-A.

18. After the Legislature adopted the 2021 Implementation Act, proponents of ranked choice voting gathered sufficient signatures to initiate a People's Veto of portions of the 2021 Implementation Act. The Secretary certified the signatures for the People's Veto on March 5, 2018. Maine voters will vote to either sustain or reject the People's Veto during the elections held on June 12, 2018. The People's Veto, if sustained by Maine voters, would reinstate ranked choice voting for elections for U.S. Senator and U.S. Representative, as well as primary elections for those offices and the offices of Governor, State Senator, and State Representative. If the People's Veto is not sustained by Maine voters, then the 2021 Implementation Act will fully take effect. A true and accurate copy of the People's Veto is attached as Exhibit C.

19. Under Article IV, Part 3, Section 17 of the Maine Constitution, the initiation of the People's Veto suspends the portions of the 2021 Implementation Act that would be repealed

if the People's Veto is approved by voters, and thereby puts ranked choice voting back into immediate effect for certain elections, including the Party's June 2018 primaries.

20.     On April 17, 2018, the Maine Supreme Judicial Court rejected state law challenges to the implementation of ranked choice voting raised by the Maine Senate, thereby requiring implementation of ranked choice voting for the June 2018 primaries as a matter of state law. In its decision, the Court adopted "in full" the reasoning of its prior advisory opinion that ranked choice voting is inconsistent with plurality voting. *Maine Senate v. Secretary of State*, 2018 ME 52, __ A.3d __.

21.     According to the Secretary of State's official website, the Secretary has already begun the process of implementing ranked choice voting for the June 2018 primaries. The Secretary's website states as follows: "The June 12, 2018 primary election will be conducted using a system of ranked-choice voting for the offices of U.S. Senate, Governor, U.S. Congress, State Senate and Representative to the Legislature, in those races that have three or more candidates. . . . In these races, voters will have an opportunity to vote for their first-choice candidate and to rank the remaining candidates in order of preference (i.e. second choice, third choice, etc.). The June primary will mark the first time that ranked-choice voting has been used in a statewide election in the United States."[2]

22.     On March 28, 2018, the Secretary promulgated proposed rules governing ranked choice voting for the June 2018 primary. 29-250 C.M.R. ch. 535. Section 4 of the proposed rules establishes vote counting procedures and provides that a candidate must obtain a majority to prevail. *Id.* § 4. Section 4 states: "After the polls close on election day, election officials in each municipality will tally the ballots . . . and will record the first choice votes cast for all ranked-choice voting contests in the same manner as for contests determined by plurality." *Id.* §

---

[2] *See* http://www.maine.gov/sos/cec/elec/upcoming/rcv.html (last visited May 3, 2018).

4(1). It further states as follows: "If no candidate has a majority of first choice votes based on the election returns provided by municipalities . . ., the RCV count must be conducted under the supervision of the Secretary of State in successive rounds . . . . In each round, the number of votes for each continuing candidate must be counted. . . . At the end of reach round, if no candidate receives a majority of the votes cast in that round, the last-place candidate is eliminated, and the next-highest-ranked continuing candidate on the defeated candidate's ballots is transferred and added to the totals for the continuing candidate for the next round." *Id.* § 4(2)(A).[3]

23. Accordingly, pursuant to state law, the Party's nominees for state and federal offices will be selected by a majority (rather than a simple plurality) vote in June 2018 using ranked choice voting, absent relief from this Court.

24. In 2018, the Republican primary election will be held on June 12, 2018. 21-A M.R.S. § 339 (primaries held on second Tuesday in June on general election years).

**Nomination of the Maine Republican Party's Candidates for State and Federal Offices**

25. The Maine Republican Party has nominated candidates for U.S. Senate, U.S. Representative, Governor, State Senator, and State Representative using a simple plurality system in its primaries since the early 1900s. The Secretary has extensive experience successfully conducting the Party's primary using a plurality vote system.

26. Until adoption of the RCV Act, there has been no conflict between Maine law and the nomination process that the Party intended to use to select its candidates for elected office.

27. With the imminent implementation of ranked choice voting for the June 2018 primaries, the Party adopted a rule specifically providing that its nominees shall be selected

---

[3] The proposed rules are available at https://www1.maine.gov/sos/cec/elec/upcoming/pdf/250rcv.pdf (last visited March 3, 2018).

{W6567773.3} 8

using a simple plurality system, rather than a ranked choice voting system that requires candidates to secure a majority in order to prevail, at its state convention on May 4, 2018.

28. The 2018 state convention was the Party's first opportunity to adopt a rule governing its nomination process after adoption of the RCV Act. The Rules of the Maine Republican Party are adopted every two years, on even numbered years, at its biennial state convention. The Rules cannot be modified except at such conventions. The Rules provide the organizational framework governing state, county, and municipal Party activities. The Rules are intended to provide for orderly party organization and management in order to further the Party's purposes and messages.

29. Rule 16, adopted by the Party at convention on May 4, 2018, states: "<u>Election of Party Nominees.</u> The Maine Republican Party's nominees for elected office, including United States Senator, United States Representative, Governor of the State of Maine, State Senator, and State Representative, shall be chosen by a plurality of votes cast."

30. Rule 16 is consistent with the Party's platform, which calls for the repeal of ranked choice voting.

31. Rule 16 reflects the Party's intent to reject the majority-vote requirement imposed by the RCV Act insofar as it applies to the Party's nomination process. A true and accurate copy of the letter from the Party's Rules and Procedures Committee recommending that delegates to the State Convention adopt Rule 16 is attached hereto as Exhibit D.

32. The Party adopted Rule 16 because the process used to nominate the Party's candidates for federal and state offices is of utmost importance to the Party.

33. The nomination process directly affects the leadership of the Party, including the official governing body of the Party. Party nominees are recognized as leaders of the Party.

Further, Party nominees that are elected to state or federal office have direct role in formal Party leadership and governance. For example, the Party is governed by the duly elected members of the Maine Republican State Committee (the "State Committee"). The voting membership of the State Committee includes members appointed by the Maine Republican Governor, members of the Maine Republican Congressional delegation, the Maine Republican State Senate Caucus, and the Maine Republican State House of Representatives caucus.

34. The nomination process is central to the Party's efforts to convey particular political messages and pursue particular public policies. The selection of Party candidates is the critical point at which the Party seeks to translate the shared principles of its members into effective political action.

  a. First, the nomination process is the vehicle for selecting the Party's most visible spokesmen and spokeswomen because it defines which Republican candidates will represent the Party during the general election. The Party's nominees are the Party's ambassadors to the general electorate in winning it over to the Party's views.

  b. Second, the nomination process plays a significant role in determining the positions the Party adopts on the public policy issues of the day. For example, elected Republican officials play a substantial part in defining the platform of the Party: the Maine Republican Governor, members of the Maine Republican Congressional delegation, and ranking Republican members of the State Senate and State House of Representatives are each entitled to appoint a member of the Committee on Resolutions, which is the Party's platform committee.

  c. Third, the nomination process plays a critical role in implementing the policies that the Party believes best advance the public interest. Elected Republican

officials are the individuals who have the ability, as a practical matter, to enact the policies reflected in the Party's platform through executive or legislative action.

35. The Party adopted Rule 16 in order to preserve the Party's long-standing tradition of selecting its nominees for state and federal elected office by simple plurality.

36. Rule 16 reflects the Party's official position that the use of a simple plurality system will produce the nominees who best represent its political platform, and will therefore best ensure that the values of the Party are maintained by its leadership, conveyed by Republican candidates during the general election, and advanced by elected Republican officials thereafter.

37. Rule 16 also reflects the Party's official position that ranked choice voting is not an appropriate voting system for its primary. Among other things, in the Party's judgment, ranked choice voting does not provide sufficient transparency, and as a result may undermine confidence in the primary election process and outcomes; may create voter confusion; may depress voter turnout; introduces unnecessary delay, complication, and expense in counting votes cast in its primary; potentially compromises the integrity of the ballot counting process and voting data relating to its primary; and renders Maine's election system, including the system utilized to conduct its primary, vulnerable to external disruption.

38. By adopting Rule 16, the Party has chosen to reject a voting system that it believes provides an inferior method for selecting the Party's nominees for elected office and instead has reaffirmed its commitment to using a tried and proven voting process.

## **Controversy and Harm**

39. An actual controversy exists between Plaintiff and Defendant. The Party is immediately and directly threatened with the implementation of a process for selection of its nominees that conflicts with the process mandated by its rules. Maine law requires

implementation of ranked choice voting for the Party's primaries in June 2018, and the Secretary has publicly stated that he will comply with state law and implement ranked choice voting for those primaries. The Rules of the Maine Republican Party, however, require use of a simple plurality voting system.

40. The RCV Act deprives the Party of its First Amendment right to determine its nominees using the selection process it deems most appropriate, and thereby irreparably injures the Party. The Party is therefore suffering harm and will suffer harm from enforcement of the RCV Act that is immediate, substantial, and incalculable. As a result of the People's Veto effort to sustain the RCV Act, the Party is left uncertain as to whether it will be able to ensure that its process for selecting nominees for the general election, including selecting one of four Republican primary candidates for Governor as the Republican nominee for that office, will be honored. The Party would have no adequate remedy at law if it is compelled to select its nominees for public office using a process that is contrary to its Rules.

## CLAIM FOR RELIEF

### Count I
### (Civil Rights, First and Fourteenth Amendments)

41. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

42. The First and Fourteenth Amendments to the United States Constitution guarantee to Plaintiff the right to freedom of association.

43. Under the First Amendment, Plaintiff has the right to select its nominees using the process that it believes will best ensure that its candidates reflect its values, will advance its messages, and will pursue its favored public policies.

44. The Act to Establish Ranked-Choice Voting places a substantial burden on Plaintiff's First Amendment rights by requiring Plaintiff to use a ranked choice voting system to select its nominees, rather than the simply plurality system mandated by its Rules.

45. The substantial burden imposed by the Act to Establish Ranked-Choice Voting on the First Amendment rights of Plaintiff is not justified by any compelling governmental interests. Proponents of the RCV Act advanced the following as rationales for ranked choice voting: (1) requiring majority rule, thereby ensuring that candidates with the broadest support among the electorate win, (2) reducing the incentives for negative campaigning, (3) eliminating vote splitting by allowing voters to vote for their preferred candidates without the concern that their least favored candidates will prevail, and (4) allowing voters to have a "voice" in selecting candidates who may not be their first choice.[4] These illegitimate and paternalistic interests cannot justify abridgement of Plaintiff's right to freedom of association.

46. Even if the interests served by the Act to Establish Ranked-Choice Voting were compelling, the law is not narrowly tailored to serve those interests.

47. Because the Act to Establish Ranked-Choice Voting imposes a substantial burden on Plaintiff's right to freedom of association without being narrowly tailored to serve adequate governmental interests, the Act violates the First and Fourteenth Amendments.

48. Because the Act to Establish Ranked-Choice Voting imposes substantial burdens on Plaintiff's First and Fourteenth Amendment rights without adequate justification, the Ranked Choice Voting Act deprives Plaintiff of its rights secured by the United States Constitution (as set forth above) under color of state law, thereby violating 42 U.S.C. § 1983.

---

[4] *See* http://www.rcvmaine.com/what_are_the_benefits_of_voting_with_a_ranked_choice_ballot (last visited May 3, 2018).

{W6567773.3}   13

49.     Plaintiff is suffering and will suffer irreparable injury as a result of being deprived of its Constitutional rights and is entitled to declaratory and injunctive relief against the Defendant in his official capacity.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays that the Complaint be deemed good and sufficient, and that the Court:

(1)     Declare that the Act to Establish Ranked-Choice Voting violates the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983, as applied to the primary elections determining the Maine Republican Party's nominees for federal and state elected office;

(2)     Enter a preliminary and permanent injunction (a) prohibiting Defendant and his officers, agents and employees from enforcing the Act to Establish Ranked-Choice Voting, as applied to the primary elections determining the Maine Republican Party's nominees for federal and state elected  office, and (b) requiring primary elections determining the Maine Republican Party's nominees for federal and state elected office be decided by a simple plurality vote in accordance with the Rules of the Maine Republican Party;

(3)     Award Plaintiff the costs of suit, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

(4)     Grant all other relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated at Portland, Maine, this 4th day of May, 2018.

                                        Respectfully submitted,

                                        /s/ Joshua D. Dunlap_____
                                        Ann R. Robinson
                                        Joshua D. Dunlap
                                        PIERCE ATWOOD LLP

>Merrill's Wharf
>254 Commercial St.
>Portland, ME 04101
>Phone: 207-791-1100
>Email: arobinson@pierceatwood.com
>Email: jdunlap@pierceatwood.com
>
>*Attorneys for Plaintiff Maine Republican Party*

I, Demi Kouzounas, declare under penalty of perjury that the factual allegations of the foregoing Complaint are personally known to me and are true and correct, and to the extent they are not personally known to me, I believe them on information to be true and correct.

Executed on May 4, 2018 at Augusta, Maine.

>Maine Republican Party
>
>By: /s/ Demi Kouzounas_____
>Demi Kouzounas
>Chair, Maine Republican Party

{W6567773.3}                                    15