UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

MAINE REPUBLICAN PARTY,

    Plaintiff,

  v.

MATTHEW DUNLAP, in his official
capacity as Secretary of State for
the State of Maine,

    Defendant,

  and

THE COMMITTEE FOR RANKED-
CHOICE VOTING,

    Prospective Intervenors.

Case No.: 1:18-cv-00179-JDL

### THE COMMITTEE FOR RANKED-CHOICE VOTING'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO INTERVENE

The Committee for Ranked-Choice Voting (the "Committee") states the following as its reply to Plaintiff's Opposition to its Motion to Intervene, Doc. No. 12. The Committee is entitled to intervene to sufficiently advocate its two-pronged interest in defending the preliminary implementation of ranked-choice voting laws it secured through litigation for the June 12, 2018 election, and to defend against a result that would allow the Republican Party to effectively campaign against a Committee-sponsored People's Veto referendum election to be held June 12, 2018 regarding future implementation of ranked-choice voting.

Plaintiff challenges the Committee's right to intervene in the above captioned matter on the basis that the Committee fails to meet two of the four requirements for intervention of right pursuant to Fed. R. Civ. P. 24(a). *See Conservation Law Found.* v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992). Plaintiff argues that (i) the Committee has no interest in the Plaintiff's attempted circumvention of ranked-choice voting laws, and (ii) the

Committee's interests are adequately represented by the State. Plaintiff concedes the timeliness of the Committee's motion to intervene, and that the disposition of this matter threatens the Committee's ability to protect its interests.

The Committee is entitled to intervention of right, pursuant to Fed. R. Civ. P. 24(a). The Committee satisfies the First Circuit's requirement that a "direct" and significant interest be shown because Plaintiff's requested relief jeopardizes both the Committee's interest in proper implementation of ranked-choice voting laws *and* its People's Veto referendum campaign to secure future implementation. The Committee's interests are not adequately represented because the Committee maintains ongoing legal adversity against the Secretary of State regarding proper implementation of ranked-choice voting.

Alternatively, the Committee is entitled to permissive intervention because its participation will not cause undue delay to the adjudication of Plaintiff's claims.

**I.  The Committee has a direct and significant interest in the dispute.**

The First Circuit applies a fact-based, case-by-case determination to confirm that prospective intervenors demonstrate a "direct, not contingent" interest in the matter, and present claims that "bear a sufficiently close relationship to the dispute between the original litigants." *See Conservation Law*, 966 F.2d at 42; *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999). Contrary to Plaintiff's characterizations, the First Circuit has rejected either a "liberal" *or* "restrictive" test of prospective intervenor's interests. *Conservation Law*, 966 F.2d at 42. The First Circuit "has not clearly adopted either of those approaches. Instead, [it has] emphasized that there is no precise and authoritative definition of the interest required to sustain a right to intervene." *Id.* (quoting *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) (internal quotations omitted)).

2

Applying its preferred fact-intensive analysis in *Daggett*, the First Circuit held that candidates defending the constitutionality of Maine law reforming campaign finance provisions demonstrated "significant interest" in a suit challenging the enacted law because the candidates had a direct stake in litigation's outcome. *See* 172 F.3d at 110. "We think it is enough that the applicants belong to a small group, quite distinct from the ordinary run of citizens, who could expect to receive direct payments for their campaigns if the Reform Act is upheld but not otherwise." *Id.*

The Committee's unique interest in compelling preliminary implementation of ranked-choice voting and advocating for permanent implementation is similar to the recognized interest of the *Daggett* intervenors. In short summary, the Committee drafted the ranked-choice voting laws that the Republican Party is challenging here, and it campaigned across Maine to secure approval by a majority of voters. The Committee lobbied the Legislature and Secretary of State's Office to implement the disputed ranked-choice voting laws, and initiated a Citizen's Veto effort to overturn the Legislature's attempted repeal and force final implementation. The Committee is presently engaged in an election campaign for passage of its Citizen's Veto through a referendum election being held simultaneously with the June 12, 2018 primaries. The Committee filed suit against the Secretary of State to compel implementation of ranked-choice voting for the June 12, 2018 election, and obtained an injunction requiring implementation to go forward. The Committee subsequently was granted intervenor-of-right status by the Kennebec County Superior Court to defend the constitutionality of the ranked-choice voting law.

The Committee's significant interest in this matter satisfies the First Circuit's fact-driven standard. Plaintiff's suit against the Secretary of State seeks to unwind the preliminary implementation of the ranked-choice voting laws *and* undermine the outcome of the People's Veto referendum election on June 12, 2018 for permanent implementation

by overtly advocating against People's Veto on behalf of the Republican Party. Like the *Daggett* intervenors, the Committee's vested interest in both preliminary implementation of ranked-choice voting on June 12 and passage of the People's Veto for future implementation is distinct from the general interest of an average supporter watching from the sidelines. *See* 172 F.3d at 110. The Committee seeks (i) to defend the Superior Court Order it independently obtained through litigation to compel immediate implementation, and (ii) to conduct a fair election campaign to support passage of its People's Veto to secure future implementation. The Committee, therefore, has a "direct, not contingent" interest in the outcome of this matter, *and* an intimate "relationship to the dispute between the original litigants." *Conservation Law*, 966 F.2d at 42.

Plaintiff's comparisons between the prospective intervenor's interest in *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197 (1st Cir. 1998) and the Committee's interest here are inapposite. *Patch*, which the *Daggett* Court described as "a very different kettle of fish" than *Daggett,* 172 F.3d at 110, involved electricity users' motion to intervene in litigation centered on electricity rates. The Court held that a mere interest in cheaper electricity was too far removed from the basis of the suit to permit intervention of right. *Patch,* 136 F.3d at 203-04. Here, the Committee's interest is much more personalized. Plaintiff's claim challenges both the court-ordered preliminary implementation of ranked-choice voting laws in the June 12, 2018 election, *and* the prospective permanent implementation of the law that would occur after a successful vote on the Committee's People's Veto on June 12. Rather than merely hoping for an advantageous outcome in their favor like the *Patch* intervenors, the Committee is seeking to defend the preliminary implementation of the law it secured through independent litigation *and* defend against Plaintiff's efforts to

4

undermine permanent implementation through what is essentially a campaign tactic to advocate that Republican primary voters oppose the June 12 People's Veto referendum.

The Ninth Circuit's holding in *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995), permitting intervention-of-right where a public interest group defended the legality of a measure it supported, is consistent with the First Circuit's standard.  In *Idaho Farm*, the intervenor public interest group actively engaged in the implementation of certain endangered species protections, and "even filed suit to compel" the government to take action on the issue.  58 F.3d at 1397-98.  The *Idaho Farm* intervenor's interest in the government's action (i) was "direct, not contingent," where the pending matter sought to unwind the result of the group's earlier litigation, and (ii) was closely related to the basis of the dispute between the original litigants that challenged the outcome of the intervenor's earlier litigation to compel government action.  *See id.*  The Committee's interest here is even stronger than the *Idaho Farm* intervenor's interest, because the Committee both secured implementation of disputed government action through its litigation, and is presently engaged in securing future implementation through its People's Veto campaign.

The facts of the case at bar are distinguishable from the Sixth Circuit cases *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) and *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007) in which that Court held an interest group defending an already implemented law must demonstrate "more" than mere support for the disputed matter.  *See Granholm*, 501 F.3d at 782.  First, unlike *Granholm* and *Cox*, in which implementation of the challenged law already had been finally decided, implementation of ranked-choice voting here is merely preliminary, applying only to the June 12, 2018 primary election.  Additionally, the Committee satisfies the Sixth Circuit's demand for "more" interest where it demonstrates a stake in the People's

Veto election on June 12, and the potential adverse effect a ruling in Plaintiff's favor would have on the Committee's ongoing campaign efforts to secure future implementation of ranked-choice voting laws.

## II.     The Committee's interest is not adequately represented by the State.

The State's previous inaction on implementation and outright opposition to the ranked-choice voting law indicates that one cannot assume that the State will adequately represent the Committee's interest in the instant case.

"An intervenor need only show that representation may be inadequate, not that it is inadequate." *Conservation Law*, 966 F.2d at 44.  Although intervenors that share an ultimate goal with a named party are presumed to be adequately represented, such presumption is overcome where the intervenor can "demonstrate adversity of interest," *Moosehead Sanitary Dist. v. S. G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir. 1979).

The Committee's ongoing adversity with the State overcomes the presumption of adequate representation.  Plaintiff's characterizations of its assumed relationship between the Committee and the Maine Secretary of State's Office and its legal representative are inaccurate and unsupported.  The adversity between the parties is more accurately described by the Kennebec County Superior Court, which was familiar with the litigation initiated by the Committee and ruled that ongoing adversity between the Committee and the State entitled the Committee to intervention of right in the lawsuit filed by the Maine Senate against the Secretary of State after the Committee's injunction against the Secretary was issued.  *See Maine Senate v. Dunlap*, No. CV-18-51 (Me. Super. Ct. Kennebec, Apr. 9, 2018).  "The Court finds that the prospective Intervenor's interests are not adequately represented by the Secretary of State.  They remain legal adversaries, despite the agreement they were able to reach on one issue generated by the litigation in [Docket No.] CV-18-24."  *Id.* at 3.

6

The adversity between the Committee and the Secretary of State recognized by the Kennebec County Superior Court on April 9, 2018 remains today. The adverse interests underpinning the litigation between the State and the Committee in *Comm. for Ranked-Choice Voting v. Dunlap*, No. CV-18-24 (Me. Super. Ct. Kennebec, Apr. 3, 2018) demonstrates that the State's representation of the Committee's interest in both preliminary *and* future implementation of ranked-choice voting "may be inadequate," *Conservation Law*, 966 F.2d at 44.

### III. Permitting the Committee's intervention will not cause unnecessary delay.

Plaintiff contends that the Committee's motion to intervene permissively should be denied by the Court because it may cause delay to the pending litigation. In fact, the Committee's intervention would cause no considerable delay whatsoever because the Court already has established a schedule of deadlines ensuring Plaintiff's injunctive motion will be timely adjudicated. The Committee's intervention would not alter the Court's schedule of deadlines, and therefore would cause no additional delay.

### CONCLUSION

WHEREFORE, for the above-stated reasons, the Committee for Ranked-Choice Voting respectfully requests that the Court grant the Committee's motion for intervention.

Dated at Portland, Maine, this 14th day of May, 2018.

Respectfully submitted,

/s/  James G. Monteleone
Michael R. Bosse, Bar No. 8358
James G. Monteleone, Bar No. 5827

BERNSTEIN SHUR
100 Middle Street
Portland, Maine 04101
207-774-1200

Attorneys for Prospective Intervenor the Committe for Ranked-Choice Voting

7

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing Reply to Plaintiff's Opposition to the Motion to Intervene with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record in this matter.

Dated: May 14, 2018                                         /s/ James G. Monteleone

                                                                           James G. Monteleone